UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Monique Cullars-Doty, et al. | No. 21-cv-94 (KMM/DJF) |
| Plaintiffs, | |
| v. | **PRELIMINARY ORDER FOR DISTRIBUTION OF SETTLEMENT PROCEEDS** |
| City of St. Paul, | |
| Defendant. | **FILED UNDER SEAL** |

Marcus Ryan Cullars Golden was killed by the St. Paul police on January 14, 2015. Monique C. Cullars-Doty, his maternal aunt, was appointed as the Special Administrator and Trustee for the Next of Kin of Mr. Cullars Golden. She sued the City of St. Paul and other, now-dismissed defendants, and ultimately reached a settlement with the City for $1,300,000. Pending before the Court is the Trustee's Amended Petition for Distribution of Settlement Proceeds. [*See* Dkt. Nos. 75, 90.]

## BACKGROUND

The Minnesota Wrongful Death Act, Minn. Stat. § 573, allows a court-appointed trustee to bring a lawsuit for wrongful death on behalf of an individual who died (the "decedent") and establishes a process by which the settlement proceeds are distributed to the decedent's surviving next of kin. *See generally* Minn. Stat. § 573.02. Any settlement or recovery "shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss" they suffered from their family member's death. *Id.* at subd 1.

1

A person's next of kin includes their children, parents, siblings, grandparents, and descendants of their grandparents. *See Wynkoop v. Carpenter*, 574 N.W.2d 422, 427 (Minn. 1998) (establishing that "for the purpose of the wrongful death statute, 'next of kin' means blood relatives who are members of the class from which beneficiaries are chosen under the intestacy statute"); *see also* Minn. Stat. § 525.2-103 (Minnesota's intestacy statute listing descendants, parents, siblings, grandparents, and descendants of grandparents).

The Trustee entered a settlement with the City of St. Paul for $1,300,000 to settle the wrongful death lawsuit she brought on behalf of her nephew. [Dkt. No. 90 at 3.] As provided by the Trustee, Marcus Cullars Golden's surviving next of kin are:

- Ericka Cullars-Golden, Marcus's mother
- Scott Golden, Marcus's father
- Blake Golden, Marcus's brother
- Shawnta'ya Brooks, Marcus's half-sister
- Dakota Golden, Marcus's half-sibling[1]
- Tayler Simon-Golden, Marcus's adopted sister
- Pauline Cullars, Marcus's maternal grandmother
- George Golden, Marcus's paternal grandfather
- Janet Sadiki, Marcus's paternal grandfather

[*See* Dkt. Nos. 76, 90.]

---

[1] Some filings refer to Dakota Golden as Marcus's sister or half-sister, while others refer to Dakota as Marcus's half-brother. [*Compare* Dkt. Nos. 76; 75 at 2; 90 at 2; (sister); *with* Dkt. Nos. 75 at 6; 90 at 5; 87 at 2 (brother).] For the sake of accuracy, and to avoid misgendering Dakota, the Court will refer to Dakota as Marcus's half-sibling.

The Trustee's petition sets forth a proposed distribution of the settlement proceeds. The original petition sought: (1) a payment of $433,333.33 to the law offices of the Trustee's attorneys, Paul Bosman and Kevin O'Connor, for attorneys' fees; (2) reimbursement of costs to Mr. Bosman and Mr. O'Connor for $10,487.17; (3) a payment of $13,000 to the Trustee for a memorial bench in Marcus's honor at Como Lake; (4) trustee fees and costs of $130,000 to Monique Cullars-Doty; (5) a payment of $245,000 to Pauline Jenkins Cullars, Marcus's maternal grandmother; (6) a payment of $216,000 to Ericka Cullars-Golden, Marcus's mother; (7) a payment of $161,179.50 to Scott Golden, Marcus's father; (8) a payment of $40,000 to Shawnta'ya Brooks, Marcus's half-sister; (9) a payment of $40,000 to Dakota Golden, Marcus's half-sibling; (10) a payment of $8,000 to George Golden, Marcus's paternal grandfather; (11) a payment of $3,000 to Janet Sadiki, Marcus's paternal grandmother; and (12) $0 to Blake Golden, Marcus's brother. [Dkt. No. 75.]

To ensure that all next of kin were properly notified of the petition and were aware of their rights under Minn. Stat. § 573.02 and Minnesota General Rules of Practice 144, the Court directed the Clerk of Court to mail copies of the petition to Marcus's next of kin and provided them with an opportunity to object in writing to the petition. [*See* Dkt. No. 78.] The Court also allowed the Trustee, if she wished, to file an amended petition or otherwise respond to any objections.

The Court received letters from George Golden, Marcus's paternal grandfather [Dkt. Nos. 79, 83]; Jennifer Hill, Marcus's paternal aunt [Dkt. No. 80]; Tayler Simon-Golden, Marcus's adopted sister [Dkt. No. 81]; Dakota Golden, Marcus's half-sibling [Dkt. No. 82]; Scott Golden, Marcus's father [Dkt. No. 84]; Shawnta'ya Brooks, Marcus's half-sister [Dkt.

3

No. 85]; Blake Golden, Marcus's brother [Dkt. No. 86]; Ericka Cullars-Golden, Marcus's mother [Dkt. No 87]; and Pauline Cullars, Marcus's maternal grandmother [Dkt. No. 88.] Many of the letters contain objections to the petition and counterproposals. For instance, Scott Golden, Marcus's father, suggested that the Trustee should receive $13,000, which amounts to 1% of the total settlement value instead of 10%; equal payments of $237,666.66 to Marcus's parents; equal payments of $61,666.67 to Marcus's four siblings; a payment of $60,589.75 to Marcus's maternal grandmother; and payments of $30,294.88 to each of Marcus's paternal grandparents. Marcus's father also recommended that the $13,000 for the memorial bench should be deducted from the portion of the attorney's fees going to Mr. O'Connor, suggesting that the bench was supposed to be donated by the City of St. Paul, but the lawyer allegedly forgot to include it in the agreement. [*See* Dkt. No. 84.]

Other next of kin from Marcus's paternal side offered similar counterproposals, suggesting a reduced distribution to the Trustee and equal shares going to each class of relatives (*i.e.*, grandparents, siblings, parents). [*See* Dkt. Nos. 79, 81, 85.] Next of kin from Marcus's maternal side, such as his mother and maternal grandmother, wrote in support of the distribution in the original petition and the Trustee receiving 10% for all the work she put into securing justice for Marcus. [*See* Dkt. Nos. 86, 87.] The letter from Marcus's only surviving full-blooded brother, Blake Golden, attempted to shed light on Marcus's relationships with each of his family members, and it supported more of the settlement proceeds going to Marcus's maternal side. [*See* Dkt. No. 86.]

In response to the letters, and the objections contained therein, the Trustee filed an Amended Petition for Distribution of Settlement Proceeds. [Dkt. No. 90.] In the amended

4

petition, the Trustee explained that since filing the original petition, she learned that she "should have considered the pecuniary losses to Marcus's heirs, rather than their expressed grief, which caused [her] to engage in a more thorough assessment of the nature of their relationships." [Dkt. No. 90 at 3.] The amended petition seeks: (1) a one-time payment of $433,333.33 to the law offices of the Trustee's attorneys, Paul Bosman and Kevin O'Connor, for attorneys' fees; (2) reimbursement of costs to Mr. Bosman and Mr. O'Connor for $10,487.17; (3) a payment of $13,000 to the Trustee for a memorial bench in Marcus's honor at Como Lake; (4) trustee fees and costs of $130,000 to Monique Cullars-Doty; (5) a payment of $245,000 to Pauline Jenkins Cullars, Marcus's maternal grandmother; (6) a payment of $216,000 to Ericka Cullars-Golden, Marcus's mother; (7) a payment of $50,000 to Scott Golden, Marcus's father; (8) a payment of $162,179.50 to Blake Golden, Marcus's brother; (9) a payment of $20,000 to Shawnta'ya Brooks, Marcus's half-sister; (10) a payment of $20,000 to Dakota Golden, Marcus's half-sibling; (11) $0 to Tayler Simon-Golden, Marcus's adopted sister;[2] (12) $0 to George Golden, Marcus's paternal grandfather; (13) $0 to Janet Sadiki, Marcus's paternal grandmother. [Dkt. No. 90.]

## LEGAL STANDARD

Proceeds from a wrongful death settlement are not distributed in a formulaic way, like the rules governing the distribution of assets when an individual dies without a will. *Cf.* Minn. Stat. § 524.2–103 (instructing that an intestate estate passes to the decedent's children, or

---

[2] Tayler Simon-Golden was left off the original petition and the initial next of kin list provided by the Trustee, but she was properly included in the Amended Petition. [Dkt. No. 90.]

5

equally to the decedent's parents if the decedent does not have children). Instead, Minnesota's wrongful death statute specifies that any recovery "shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss" they suffered, and instructs courts to determine "the proportionate pecuniary loss of the persons entitled to the recovery" and order a "distribution accordingly." Minn. Stat. § 573.02, subd. 1. Thus, the statute's allocation among family members is not based on the sadness or grief they feel from the death of their loved one. Rather, pecuniary loss is a "loss of money or of something having monetary value," that "can be estimated and monetarily compensated." *See* Pecuniary Loss and Pecuniary Damages, Black's Law Dictionary (11th ed. 2019). Pecuniary loss is "not limited to the loss of income. Rather, pecuniary loss also includes the loss of aid, advice, comfort, assistance, and protection which the survivor reasonably could have expected if the decedent had lived." *Mattson v. Burlington N. R.R. Co.*, No. C5-89-1253, 1990 WL 1727, at *1 (Minn. Ct. App. Jan. 16, 1990) (citations omitted). Whether or not next of kin have incurred a pecuniary loss from their relative's wrongful death is a question of fact. *Hagman v. Schmitz*, No. A11-62, 2011 WL 2672355, at *3 (Minn. Ct. App. July 11, 2011). Courts are instructed to consider the number of years of support each heir or next of kin was deprived of by the death of their family member, as well as the nature of the person's relationship with the decedent, and the extent to which the decedent had supported the person in the past. *Rath v. Hamilton Std. Div. of United Tech. Corp.*, 292 N.W.2d 282, 284–86 (Minn. 1980).

As for process, the court-appointed trustee must file a petition with the Court proposing a distribution of proceeds from the wrongful death action. Minn. R. Gen. P.

6

144.05.³ The Court need not accept the trustee's proposed distribution and may determine for itself the proportionate pecuniary loss of the persons entitled to the recovery. *See* Minn. R. Gen. P. 144.05 (allowing the court to "approve, modify, or disapprove the proposed disposition"); *see also Bond v. Roos*, 358 N.W.2d 654, 657 (Minn. 1984). "[A]ll parties who are [next of kin] are entitled to present evidence of pecuniary loss suffered as a result of the decedent's death." *Hagman*, 2011 WL 2672355, at *2. Funeral expenses and "any demand for the support of the decedent" are first subtracted from the proceeds, *see* Minn. Stat. § 573.02, subd. 1, as well as reasonable attorneys' fees and costs, before the remaining proceeds are then distributed to family members. *Hagman*, 2011 WL 2672355, at *2–4. The Court has discretion to determine the reasonableness of the attorneys' fees, and a contract for attorneys' fees is not binding on the court. *Id.*

## DISCUSSION

The Court has read and considered all the letters that Marcus's next of kin submitted to the Court, as well as the Trustee's petitions and accompanying letters. Every family member shared positive memories of Marcus and detailed how his kindness and generosity enriched their lives. Each also detailed the ways in which his absence has left a hole in their hearts and described the emotional toll his absence exacts in their lives. Through these letters, the Court also learned of the fractures in the relationships among those who survive him, and the complicated family dynamics present before and after Marcus's death.

---

³ Under Local Rule 17.1, courts in this district are to apply "the State of Minnesota's procedure for approving settlements." Thus, the Court must apply Minn. R. Gen. P. 144.05 to cases involving claims brought by a trustee under the Minnesota Wrongful Death Act, Minn. Stat. § 573.

To the extent the Court does not address certain aspects of the intensely personal statements shared in the letters, this should not be interpreted as the Court not having considered them. There can be no doubt that Marcus was a much-loved young man, and that his death left a deep sadness and grief for the loved ones he left behind. However, the Court is obliged to make its determination based on an established legal framework rather than on emotion, and that framework dictates the outcome. No family member or loved one should read the following disbursements as a suggestion that the Court doubts the loss they have suffered or the genuineness of their feelings.

The Order of Distribution entered below reflects the Court's determination of the proportionate pecuniary loss suffered by each of Marcus's next of kin. Although the letters surfaced some minor disputes among next of kin, the Court finds that a hearing is not necessary to resolve these disputes, and that this distribution fairly and appropriate accounts for the pecuniary losses suffered by each next of kin. The Court appreciates the proposals submitted by Marcus's paternal relatives for evenly divided shares of the settlement proceeds distributed to each type of relative (*i.e.*, parent, grandparent, sibling), and while such a distribution would be easier in some ways, the Court finds that it would not accurately reflect the pecuniary loss suffered by each next of kin, which is the guiding legal standard to which this Court is bound.

With respect to attorneys' fees and costs, the Court finds that $420,333.33 is reasonable and appropriate for attorneys' fees for the Trustee's two attorneys. It also authorizes reimbursement to Mr. Bosman and Mr. O'Connor in the amount of $10,487.17 for costs and past litigation expenses they have incurred in this action.

The Court's distribution includes a payment of $13,000 to Monique Cullars-Doty for the memorial bench at Como Lake in Marcus's honor. Several next of kin suggested that the bench was supposed to be donated by the City of St. Paul, but one of the attorneys forgot to put it into the settlement agreement and allegedly communicated to the Trustee that he would pay for it. These next of kin suggested the money for the memorial bench should therefore come from the portion of the settlement proceeds going to the attorneys for fees and costs. [*See, e.g.*, Dkt. No. 84 at 2.] The Court asked Trustee's counsel to respond to this suggestion. [Dkt. No. 92.] The letter from Trustee's counsel does not deny the allegation that the payment for the bench was left off the settlement agreement by mistake. [Dkt. No. 93.] The Court finds that it is fair and reasonable for the $13,000 for the memorial bench to come from the portion of the settlement proceeds going to the attorneys and has deducted that amount from the $433,333.33 in fees requested by the Trustee's Amended Petition, as reflected above.

With respect to Ms. Cullars-Doty, the distribution determined by this Order reflects both her services as Trustee and her pecuniary loss from Marcus's death, given her closeness with him as documented by the petition and letters from various family members. Marcus's mother detailed how Marcus was like a son to Ms. Cullars-Doty, and the Court finds it appropriate to account for the loss of aid, advice, comfort and assistance that Ms. Cullars-Doty reasonably could have expected from Marcus if he had not died. *See Mattson*, 1990 WL 1727, at *1. And while the proportion of the settlement proceeds in the Court's distribution order for Ms. Cullars-Doty may be larger than is typical for trustees, the Court finds that such a proportion is warranted by the circumstances of this case. Ms. Cullars-Doty was instrumental in securing justice for Marcus. She wrote and filed the petition to become the

Special Administrator and Trustee so that she could bring a wrongful death lawsuit on behalf of Marcus, and she paid the filing fees to do so. [Dkt. No. 75 at 1.] She also wrote the complaint and filed this wrongful death lawsuit pro se before retaining counsel later. [*Id.* at 3–4.] Over the last eight years, Ms. Cullars-Doty was extensively involved in Marcus's case and promoting it to the public. For instance, she organized "press conferences, marches, protests and actions to clear Marcus' name" and "keep Marcus' case in the public eye." [*Id.* at 4.] She also managed social media accounts to educate the public about Marcus's case, worked with the Communities United Against Police Brutality reinvestigation team to investigate his case, prevented the City of St. Paul from disposing of his car to preserve its evidentiary value, and attended numerous court hearings and meetings with attorneys. [*Id.*] Ms. Cullars-Doty's petition also states that she arranged Marcus's funeral, wrote his obituary, designed his headstone, and created a monthly memorial in the place where Marcus was killed. [*Id.*] She is Marcus's trustee in the fullest sense of the word. The Court has also considered that, as Trustee, Ms. Cullars-Doty has been responsible for pursuing this action, which resulted in the recovery, in no small part from her efforts, that is being allocated in this decision.

The large distribution to Marcus's maternal grandmother, Pauline, is in recognition of her significant pecuniary loss from Marcus's death, including the loss of aid, service, assistance, and protection that the record shows she reasonably could have expected if Marcus had lived. The Amended Petition and many of the letters described Marcus's close relationship with Pauline, and the amount of work he was performing for Pauline and her late husband at the time Marcus died. Specifically, he lived with his maternal grandparents, Pauline and Lafayette, and provided extensive daily care and medical care for them. [Dkt. No. 90 at 4.] His

10

grandparents had a gap in time from 12 to 5pm each day without aides at their home, so Marcus filled that role every day during that shift.  In addition to maintaining the house and yard, Marcus also ran errands, provided transportation for his grandparents, attended their doctor's appointments, and helped his grandfather out of bed.  [Dkt. No. 88.]  Pauline details the physical and emotional strain she experienced in attempting to care for her husband after Marcus's death, particularly when aides would not show up or Lafayette would fall or slip out of bed and Marcus was not there to help.  [*Id.* at 2.]  Aside from providing physical labor and medical care, Marcus also enjoyed spending time with his maternal grandparents, such as by going out to dinner with them and watching Minnesota sports games; the Court finds that it is appropriate to account for this loss of comfort based on the nature of Pauline's close relationship with Marcus.  *See Hagman*, 2011 WL 2672355, at *3; *Rath*, 292 N.W.2d at 284–86.  Given that Marcus was less close with his paternal grandparents, both physically and emotionally, and they did not rely on him for any daily tasks, the distribution in this Order reflects this difference.  While not intended to diminish the love and affection they have for Marcus and the pain they experienced at his passing, the record does not support a finding that his paternal grandparents sustained a compensable pecuniary loss.

Marcus's parents have both also incurred pecuniary losses from his death.  In particular, the Court notes that the evidence showed Marcus was particularly close to and supportive of his mother and that he provided her substantial aid, advice, comfort, assistance, and protection which she reasonably could have expected to continue if he had lived.  The Trustee's petitions also detail how Marcus's mother, Ericka Cullars-Golden, had to take on many of the duties that Marcus used to provide for her parents and reduced her work hours significantly as a

11

result.  The distribution to Marcus's father, Scott Golden, reflects that he too suffered a loss of aid, advice, comfort, assistance, and protection that he reasonably could have expected if Marcus had lived.  The original petition notes that Scott was "deeply traumatized" by Marcus's death, which caused him to go on long-term disability before losing his job completely and then losing his housing as a result. [*See* Dkt. No. 75 at 6; *see also* Dkt. No. 84 at 2.]  Scott also contends that he shared in the expense of Marcus's funeral and burial, and the proportion of the settlement distribution assigned to him is also intended to account for that claimed pecuniary loss.

With respect to Marcus's siblings, the distribution determined by this Order reflects the different relationships Marcus had with his siblings.  The Court distributes more of the proceeds to Marcus's only surviving full-blooded brother Blake with whom, by nature of growing up together largely in a single-parent home, Marcus was particularly close.  [*See* Dkt. No. 86.]  Nevertheless, the Court also finds that his half-sister, Shawnta'ya; half-sibling Dakota; and adopted sister, Tayler have also suffered pecuniary losses from the loss of aid, service, assistance, and protection that the record shows they reasonably could have expected if Marcus had lived, and the distribution accounts for those losses.[4]

**ORDER OF DISTRIBUTION**

Having reviewed the Trustee's Amended Petition, along with the written objections of Marcus Ryan Cullars Doty's next of kin, **IT IS HEREBY ORDERED THAT:**

---

[4] Although Marcus also had a stepbrother, Justin Mallory-Irons, Minnesota law does not recognize him as a next of kin.  However, pursuant to Minn. Stat. § 260C.635(1)(b), adopted siblings are treated as biological siblings and thus are included in the next of kin for purposes of wrongful death actions.  *See McKeown v. Argetsinger*, 202 Minn. 595, 279 N.W. 402, 404 (1938).

1. Trustee's Amended Petition for Distribution of Settlement Proceeds Pursuant to Minn. Gen. R. Pract. 144.05 (Doc. No. 90) is **GRANTED IN PART** and the settlement of $1,300,000 shall be disbursed as directed below.

2. **$130,000** shall be paid to Monique Cullars-Doty, Marcus's Trustee and maternal aunt, to be paid in lump sum or through structured annuity payments per direction of Monique Cullars-Doty.

3. **$245,000** shall be paid to Pauline Jenkins Cullars, Marcus's maternal grandmother, to be paid in lump sum or through structured annuity payments per direction of Pauline Jenkins Cullars.

4. **$216,000** shall be paid to Ericka Denise Cullars-Golden, Marcus's mother, to be paid in lump sum or through structured annuity payments per direction of Ericka Denise Cullars-Golden.

5. **$97,179** shall be paid to Scott James Golden, Marcus's father, to be paid in lump sum or through structured annuity payments per direction of Scott James Golden.

6. **$100,000** shall be paid to Blake Evan Golden, Marcus's brother, to be paid in lump sum or through structured annuity payments per direction of Blake Evan Golden.

7. **$20,000** shall be paid to Shawnta'ya Ronya Lakeish Brooks, Marcus's half-sister, to be paid in lump sum or through structured annuity payments per direction of Shawnta'ya Ronya Lakeish Brooks.

8. **$20,000** shall be paid to Dakota Jordan Golden, Marcus's half-sibling, to be paid in lump sum or through structured annuity payments per direction of Dakota Jordan Golden.

9. **$20,000** shall be paid to Tayler Marie Simon, Marcus's adopted sister, to be paid in lump sum or through structured annuity payments per direction of Tayler Marie Simon.

10. **$8,000** shall be paid to George Thomas Golden, Marcus's paternal grandfather, to be paid in lump sum or through structured annuity payments per direction of George Thomas Golden.

11. **$3,000** shall be paid to Janet Arlene Sadiki, Marcus's paternal grandmother, to be paid in lump sum or through structured annuity payments per direction of Janet Arlene Sadiki.

12. **$420,333.33** shall be paid to the O'Connor Law Firm, Ltd. and Paul J. Bosman for attorneys' fees, and **$10,487.17** for past costs and litigation expenses, to be paid per direction of Mr. O'Connor and Mr. Bosman.

13. **$13,000** shall be paid to Monique Cullars-Doty for the memorial bench in Marcus's honor at Como Lake and two ten-year extensions.

14. The Clerk of Court is directed to mail copies of this order to each of Marcus's next of kin. [*See* Dkt. No. 90 (list of individuals); Dkt. No. 76 (addresses).[5]]

15. Within 10 days of the entry of this Order, Trustee and her counsel shall submit a final proposed Order for Distribution of Settlement Proceeds. This final proposed order shall be consistent with paragraphs 1-13 above and shall include the necessary language to effectuate the Court's orders and directives as set forth above.

---

[5] Tayler Simon-Golden's address is not included in Dkt. Nos. 90 or 76 but can be found at Dkt. No. 81.

Date: June 20, 2023

                                                *s/Katherine Menendez*
                                                Katherine Menendez
                                                United States District Judge